**SO ORDERED.**

**SIGNED July 16, 2013.**



ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

JAG CONSTRUCTION SERVICES, INC.,                CASE NO. 12-51014

  Debtor                                         Chapter 11
-----------------------------------------------------------------
                       MEMORANDUM RULING
-----------------------------------------------------------------

The present matter before the court is JAG Construction Services, Inc.'s objection to the proof of claim of J&B Boat Rental, LLC. The court held oral argument on JAG's objection and took the matter under advisement following the hearing. After reviewing the parties' submissions, arguments, and the relevant authorities, the court rules as follows.

### BACKGROUND

JAG was a sub-contractor on the Morganza Gulf Hurricane Protection Project and, in that role, contracted with various parties to provide barges, tugboats, and other equipment and

services to the project. On or around May 1, 2011, JAG and J&B entered into an oral agreement to provide tugboat services in connection with the Morganza Project. It is undisputed that J&B provided a tugboat and crew to JAG for approximately thirteen days from May 12, 2011, through July 28, 2011 pursuant to this agreement. However, the parties dispute how J&B was to be compensated. JAG's representative, James Duhon, testified that the parties never reached agreement on compensation prior to JAG hiring J&B for the project. Duhon testified that he and his counterpart at J&B, Brooks Pellegrin, were friends and that the agreement between JAG and J&B was informal because of that friendship. He testified that JAG and J&B never agreed on specific terms for J&B's compensation, but agreed only that JAG would be treated fairly and reasonably in light of industry practice. According to Mr. Duhon, industry practice is to rent tugboats by the hour or by a flat "day rate" depending on the nature of the job. He testified that he expected J&B to charge JAG a flat day rate for the Morganza project because it is customary for parties to agree to a flat day rate when a tugboat is being used for long periods of time. In contrast, JAG typically negotiates hourly rates when a tugboat is used for shorter periods of time and can be immediately released after use.

On June 6, 2011, J&B issued an invoice to JAG reflecting that

its tugboat was used for a total of 207 hours from May 12 through June 1, 2011 with an hourly rate of $300 per hour for a total bill of $62,100. Mr. Duhon testified that an hourly rate was unreasonable under the circumstances. According to Mr. Duhon, the flat day rate he had negotiated with other boat providers on the Morganza project ranged from $1,700 to $1,900. The J&B invoice, however, reflected eight days where it billed JAG between eighteen and twenty-four hours for tugboat usage. The daily boat logs in the record reflect that the tugboat was not in use for the entire eighteen to twenty-four hour periods reflected in the invoice. According to the testimony of Mr. Duhon and Mr. Pellegrin, the billing included wait time when the tugboat was not in use but JAG had not "released" the boat. Duhon testified that with respect to the twenty-four hour days, the total fee at $300 per hour amounted to $7,200, which significantly exceeded the average day rates that JAG had negotiated with other boat providers on the Morganza project.

In contrast, Mr. Pellegrin testified that Mr. Duhon actually requested an hourly rate when the parties first discussed the project. According to Pellegrin, Duhon believed that he could save money with an hourly rate if he could timely release the vessel after its use each day. Pellegrin conceded that, while the parties discussed billing on an hourly rate basis, they did not discuss the

-3-

specific hourly rate of $300 before J&B committed its tugboat to the project on May 12, 2011.

Mr. Duhon further testified that he contacted Pellegrin shortly after receiving the June 6, 2011 invoice for $62,100, and disputed the reasonableness of those charges. Duhon contends that he and Pellegrin ultimately agreed that JAG would be charged a flat day rate of $2,200 and that JAG would pay J&B an additional $10,000 for fuel and lube. Pellegrin denies that any such agreement was reached. However, he testified that Duhon did call him about the invoice to complain about the amount charged by J&B. J&B subsequently issued another invoice to JAG on August 3, 2011 reflecting work performed (at a $300 hourly rate) on July 8 and July 28, 2011 totaling $4,200.

J&B ultimately filed a collection suit in the Eastern District of Louisiana under the Miller Act, 40 U.S.C. § 3133. This suit was stayed when JAG filed for relief under Chapter 11 of the Bankruptcy Code on August 13, 2012. J&B filed a proof claim and an amended claim asserting a claim for $66,300.00 for the June 6, 2011 and August 3, 2011 invoices.

## DISCUSSION

A proof of claim filed in accordance with 11 U.S.C. § 501 constitutes *prima facie* evidence of a creditor's claim unless a party in interest objects to that claim. See 11 U.S.C. § 502(a).

-4-

An objecting party has the initial burden of coming forward with evidence disputing the validity or amount of the claim. See In re Fullmer, 962 F.2d 463 (10th Cir. 1992). Once an objecting party satisfies this burden, the ultimate burden shifts to the claimant. In re Allegheny Int'l, Inc., 954 F.2d 167 (3rd Cir. 1992) (holding that the burden is always on a creditor to establish a proof of claim). In determining the validity or amount of the claim, the court looks to the applicable non-bankruptcy law governing the claim. See In re Johnson, 960 F.2d 396 (4th Cir. 1992) (court must look to applicable state law to determine the validity of a right created under state law).

Here, JAG has presented sufficient evidence to overcome the *prima facie* validity of J&B's proof of claim. The ultimate burden, therefore, is on J&B to establish the validity and amount of its claim. J&B's claim is based on an alleged oral agreement to rent a tugboat and crew. The evidence at trial establishes that the parties entered into an agreement for the rental of a tugboat and that J&B performed that agreement by providing a tugboat and crew from May 12, 2011 through July 28, 2011. The question for the court is whether J&B has established that the parties agreed to the $300 hourly rate of compensation reflected in J&B's proof of claim.

The court concludes that J&B has not established that the parties reached an agreement on compensation at a $300 hourly rate.

-5-

Mr. Pellegrin testified that J&B provided two licensed captains with its vessel for the Morganza project and explained that this conduct is consistent with industry practice where a boat rental is based on an hourly rate.[1] Pellegrin explained that J&B would not have provided a second captain if the parties had agreed to a flat rate. In contrast, JAG's management of J&B's boats during the course of the project is more consistent with a flat daily rate rental. Specifically, the boats worked less than twelve-hour shifts, and spent the remainder of the time on standby. The boats were not immediately released after performing their assigned tasks. Considering the record as a whole, the court agrees with JAG that the parties did not reach any agreement on specific compensation terms.

The fact that the parties did not agree on the amount of compensation due J&B does not, however, vitiate the parties' agreement. See Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569, 574-75 (La. App. 1989) (noting that "neither La. Civ. Code Art. 1779 (requisites for validity of a contract) nor

---

[1] According to Mr. Pellegrin, a boat provided on a flat daily rate is considered rented for twelve hours during the day. Since applicable law and regulations limit a licensed captain to a twelve-hour work day, an additional licensed captain is not needed for flat rate daily rentals. In contrast, for projects where a boat is rented on an hourly basis, J&B provides two licensed captains in case the project exceeds the twelve hour limit for one captain.

-6-

La. Civ. Code Art. 1761 (which defines a contract) recites that a contract requires a stated compensation or price"). Where, as here, the record reflects a valid oral agreement but the parties fail to reach agreement on the terms of compensation, the court will determine a reasonable value for what was provided under the agreement. Id.; Dumas & Associates, Inc. v. Lewis Enterprises, Inc., 704 So.2d 433, 437 (La. App. 2d Cir. 1997). In the present case, the court agrees with JAG that industry practices would dictate a flat daily rate given how J&B's tugboat was utilized on the Morganza project. A $300 hourly rate under these circumstances results in compensation of approximately $5,000 to $7,200 per day when other parties providing tugboats to the Morganza project were charging JAG flat day rates of approximately $1,700 to $1,900. In the cases where JAG paid an hourly rate to a tugboat provider, the tugboat was used for less than twelve hours during the day and released. Mr. Pellegrin conceded that a flat daily rate of $2,200 and reimbursement for fuel and lube -- which are the terms that Duhon discussed with Pellegrin after receiving the June 6th invoice -- would be reasonable if J&B had not incurred the cost of providing a second licensed captain.

The court concludes that J&B is entitled to compensation at a flat day rate of $2,200 adjusted for the cost of having to provide a second captain on the crew. Unfortunately, the record is not

-7-

entirely clear on this additional cost.  There is testimony in the record from Mr. Pellegrin that the two-captain crew provided by J&B cost $1,000 and that a single-captain crew for a job billed at a flat day rate would be roughly half that amount.  Accordingly, the court concludes that the $2,2000 should be increased by $500 (half of the crew expenses for a two-captain crew) to a total of $2,700 per day. At $2,700 per day for 13 days of service, J&B is entitled to $35,100. J&B is also entitled to reimbursement of fuel and lube costs of $12,840 because the record indicates that these costs would typically be reimbursed where the parties agree to a flat day rate.  Finally, J&B is entitled to food expenses of $106.86.

## CONCLUSION

For the foregoing reasons, J&B's claim is ALLOWED in the amount of **$48,046.86.**  In all other respects, J&B's claim is disallowed. Accordingly, the Debtor's Objection to Claim is **SUSTAINED IN PART and DENIED IN PART**.

**IT IS SO ORDERED.**

###